Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 7192 | DATE | May 21, 2004 |
| CASE TITLE | Nike, Inc. v Circle Group Internet, Inc. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Hearing
(5) ☐ Status hearing set for 6/1/04, at 9:00 a.m.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum opinion and order entered. Plaintiff's motion for summary judgment on Count I is granted and defendant's motion for summary judgment on Count IV is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 24 2004 date docketed | 55 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NIKE, INC., an Oregon corporation,              )
                                                )
            Plaintiff,                          )
                                                )   No.   02 C 7192
      v.                                        )
                                                )   Judge Robert W. Gettleman
CIRCLE GROUP INTERNET, INC., an Illinois        )
corporation,                                    )
                                                )
            Defendant.                          )

## MEMORANDUM OPINION AND ORDER

Plaintiff Nike, Inc. filed a four-count complaint seeking damages and injunctive relief against defendant Circle Group Internet, Inc., alleging that defendant's use of the domain name <justdoit.net> constitutes: cybersquatting under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d) (Count I); trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1), and the common law of various states, including Illinois (Count II); unfair competition under the common law of various states, including Illinois, as well as a violation of the Illinois Deceptive Trade Practices Act, 815 ILCS §§ 510/1 et seq. (Count III); and dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c) (Count IV).

Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56(c) on Count IV, and plaintiff has moved for summary judgment on Count I. For the reasons discussed herein, plaintiff's motion for summary judgment is granted and defendant's motion for summary judgment is denied.



# FACTS[1]

Plaintiff Nike is a sports and fitness company that designs, manufactures, and markets a broad range of footwear, apparel and equipment. Since 1988, plaintiff has continuously used and promoted the trademark "JUST DO IT" in the United States and worldwide in connection with footwear, apparel, equipment, retail store services, web-based communication, informational services, advertising, and other related goods and services. Plaintiff owns valid and subsisting federal trademark registrations issued by the United States Patent and Trademark Office for its JUST DO IT mark, including Reg. Nos. 1,817,919 (registered on January 25, 1994) and 1,875,307 (registered on January 24, 1995). Plaintiff's exclusive right to use these registrations has become incontestable under 15 U.S.C. §§ 1065 and 1115.

Plaintiff has spent hundreds of millions of dollars advertising and promoting its JUST DO IT mark and has sold tens of millions of dollars in apparel under that mark. Plaintiff has produced advertisements featuring JUST DO IT annually since 1990, and has further produced apparel featuring that mark every season since 1990. Plaintiff also owns the <justdoit.com> domain name.

Defendant Circle Group Internet, Inc., which was started in 1994, is a company engaged in the business of assisting emerging companies trying to build their business infrastructure. On or about February 20, 1997, defendant registered the domain name <justdoit.net> with Network Solutions, Inc. and began using it for the purpose of employee email addresses. From 1999 to

---

[1] Unless otherwise noted, the following facts, taken from the parties' L. R. 56.1 Statements and attached exhibits, are not in dispute.

2002, defendant also used the <justdoit.net> domain name to redirect internet users to its web sites at <circlegroupinternet.com> and <crgq.com>.

Defendant makes no use of the JUST DO IT mark or the phrase "just do it" on its website, and has no trademark registrations or applications for the JUST DO IT mark. Nor is JUST DO IT part of defendant's legal name or the legal name of any individual in the company. Defendant at no time provided goods or services in connection with the <justdoit.net> domain name, which was merely used as a redirect to defendant's primary websites.

As of the mid- to late-nineties, defendant's CEO, Gregory Halpern, was aware that plaintiff used JUST DO IT. Moreover, in his deposition, Halpern acknowledged that it was possible that he knew of plaintiff's use of the JUST DO IT phrase prior to registering <justdoit.net>.

According to Halpern, he chose <justdoit.net> as his company's domain name because it is a positive, catchy and motivational phrase that he has been using for over thirty years, as well as in his book I Care About You, which was published by Can-Do Publishing Company, Inc. in 1978. According to the declaration of Ashly Iacullo, attached to plaintiff's reply, however, I Care About You does not contain the phrase "just do it," and defendant has not directed the court's attention to any excerpt of the book that recites that phrase. Further, in its own review of the book, the court also could not locate the phrase "just do it." Nor has defendant provided any other evidence that would corroborate Halpern's testimony that he used the phrase consistently over the past thirty years.

On June 13, 2002, plaintiff filed a complaint with the World Intellectual Property Organization Arbitration and Mediation Center ("WIPO") regarding defendant's use of the

3

<justdoit.net> domain name. A majority of the WIPO panel concluded that Nike was unable to show that Circle Internet Group <u>registered</u> the <justdoit.net> domain name in bad faith, relying at least in part on Circle Internet Group's representation that <justdoit.net> was used as its main web page. In reaching that conclusion, however, the majority opinion noted that using the domain name as a redirect to its own web page "could potentially qualify as 'bad faith' <u>use</u>." (Emphasis added.)

With this background in mind, the court turns to the standards governing the instant motions for summary judgment.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Fed. R. Civ. P. 56 when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Unterreiner v. Volkswagen of America, Inc.</u>, 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); <u>Becker v. Tenenbaum-Hill Assoc., Inc.</u>, 914 F.2d 107, 110 (7th Cir. 1990). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986).

# DISCUSSION

1. <u>Plaintiff's motion for summary judgment on Count I</u>

Plaintiff has moved for summary judgment on its Anticybersquatting Consumer Protection Act (ACPA) claim, 15 U.S.C. § 1125(d). To prevail under the ACPA, plaintiff must establish that: (1) its JUST DO IT mark is distinctive and famous; (2) defendant's <justdoit.net> domain name is identical or confusingly similar to plaintiff's JUST DO IT mark; and (3) defendant registered or used the <justdoit.net> domain name with bad faith intent to profit. 15 U.S.C. § 1125(d)(1)(A). Defendant does not dispute that the first two elements of plaintiff's ACPA claim have been met in the instant case. Accordingly, the court focuses its attention on the third element: bad faith intent to profit.

The ACPA, 15 U.S.C. § 1125(d)(1)(B)(i), lists the following non-exhaustive factors to assist the court in determining whether a person or entity acted with bad faith:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

5

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

The ACPA also includes a "safe harbor" provision that provides that bad faith "shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful." 15 U.S.C. § 1225(d)(1)(B)(ii).

The sixth, seventh and eighth factors do not support a finding of bad faith. Plaintiff concedes that defendant never offered to transfer, sell or otherwise assign <justdoit.net> for financial gain. Moreover, there is no evidence that defendant provided material and misleading false contact information when applying for its registration of <justdoit.net>, or that defendant acquired multiple domain names which it knows are identical or confusingly similar to others' marks.

Defendant does not dispute, however, that the first, second, third, fourth, fifth, and ninth factors favor plaintiff. Defendant does not have any intellectual property rights in <justdoit.net>, and <justdoit.net> does not consist of defendant's legal name or a name that is commonly associated with defendant. Defendant has also not used <justdoit.net> in connection with the bona fide offering of any goods or services. Nor has defendant made bona fide noncommercial

or fair use of the JUST DO IT mark in a site accessible under <justdoit.net>. Defendant also concedes that it was aware of plaintiff's JUST DO IT mark when it registered <justdoit.net> and used it to divert traffic to its primary website, <crgq.com>. Further, defendant does not contest that JUST DO IT is distinctive and famous.

On balance, the factors described above lead to the inescapable conclusion that defendant acted in bad faith and no reasonable factfinder could conclude otherwise. Defendant registered a domain name containing plaintiff's famous and distinctive trademark and used that domain name to, among other things, divert web traffic to its own website. Other than defendant's unsubstantiated representation that its chief executive officer, Halpern, had used the phrase "just do it" in the past, defendant does not appear to have any connection with JUST DO IT: "just do it" is not part of defendant's name or that of any of its affiliates, and defendant does not make bona fide noncommercial use or fair use of "just do it" on its website. Quite simply, defendant sought to capitalize on plaintiff's goodwill in its JUST DO IT mark by diverting users to defendant's primary website by using the <justdoit.net> domain name.

Defendant argues that its registration of <justdoit.net> instead of <nikeinc.net> suggests that it did not <u>intend</u> to "steer" plaintiff's customers to its own websites. This argument is unpersuasive. As defendant concedes, plaintiff's JUST DO IT mark is both famous and distinctive, and has been used by plaintiff since 1988. Indeed, at the time of its registration of the <justdoit.net> domain name, defendant admits that it knew of plaintiff's mark.

Defendant also maintains that the absence of the sixth factor – specifically, the fact that defendant never offered to sell <justdoit.net> to plaintiff – precludes a finding of bad faith. The court disagrees. Offering to sell the domain name is but one of several factors that the court may

7

consider in assessing bad faith. The absence of that factor alone does not preclude a finding of bad faith, especially in light of the other factors supporting such a finding. See, e.g., Victoria's Cyber Secret Limited Partnership v. V Secret Catalogue, Inc., 161 F. Supp. 2d 1339, 1348 (S.D.Fla. 2001) (granting summary judgment on ACPA counterclaim when "record [was] devoid of any evidence regarding plaintiff VCS's offer to sell or assign the domain names...."); Mattel, Inc. v. Adventure Apparel, 2001 WL 1035140 (S.D.N.Y. Sept. 7, 2001) (granting summary judgment on ACPA claim when there was "no evidence" that defendant offered to sell, transfer or assign the domain name at issue).

Nor does the outcome of the WIPO administrative proceeding preclude a finding of bad faith. The panel's finding that defendant did not register the <justdoit.net> domain name in bad faith was explicitly based on its (mistaken) understanding that <justdoit.net> was used as defendant's main web page. Moreover, the entire panel found that defendant's practice of redirecting the <justdoit.net> domain name to defendant's primary site supported a finding of bad faith use. Thus, this court's conclusion that defendant acted in bad faith, and that no reasonable fact finder could conclude otherwise, is not contradicted by the WIPO decision.

Nor may defendant avail itself of the ACPA's safe harbor provision, which precludes a finding a bad faith "in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii). Defendant argues that Mr. Halpern's use of the phrase for more than thirty years in motivational speeches, as well as in his book I Care About You, led defendant to reasonably believe that it could use the phrase in the <justdoit.net> domain name at issue. As noted earlier, however, defendant has not directed the court to any excerpts from the book that

include that phrase, and the court has not located the phrase in the text of the book, which was submitted by plaintiff. Moreover, plaintiff represents, and defendant does not dispute, that the phrase "just do it" is not used in I Care About You.

Quite simply, defendant has not provided any evidence that supports his representation that other individuals have heard Halpern utter the phrase "just do it." The absence of such corroborating evidence is particularly conspicuous in light of Halpern's deposition, at which he testified:

> Q: Can you describe your use of the "just do it" phrase dating back 30 years?
> A: Mm-hmm. Well, I have just – you know, I'm an optimist. I heard Dean Martin sing the song Just Do It in the '60s and I adopted it but I adopted lots of positive phrases too. That's just one of many positive phrases.
> Q: So, can you detail your use at all? Do you have any specific examples dating back 30 years?
> A: Well, I used it to my parents all of the time.
> Q: Do you have any examples that you used to your parents?
> A: Just for anything to get it done, any kind of project at all, any household project, work around the house, schoolwork, anything that needed positive input.
> ...
> Q: Did you ever write it down?
> A: Routinely.
> Q: Do you have any of those documents?
> A: Well, I wrote it in school papers and such but, no, I didn't keep any of my paperwork from school.
> Q: Okay. So what is the most recent document use you have of Just Do It?
> A: I think – well, I'll have to check, but I think I used it in a book I wrote when I was 19.
> ...
> Q: Beyond this use in '66 and '67 over the next 29 years or so, what other use did you make, any specific examples you can think of?
> A: Sure. I did a lot of positive and motivational speaking. I always used it in my seminars.
> Q: Are those recorded?
> A: No.
> Q: So there's no videos of your speeches?
> A: There might be actually. That's a good point. I didn't think about that.
> ...
> Q: I'm assuming you will produce these if it turns out –

9

A. If they're available, yeah.

...

Q: Aside from your parents, you talked about using it in school. Are there any teachers of whom you might have used it in front of?
A: Yeah.
Q: What would their names be?
A: One would be Ray Horton

...

A: I've got another one, too. Zig Ziggler is a motivational speaker. Then another guy is Chuck Reeves who I am pretty sure would remember my use on [sic] it several times.

...

A: I'd have to check with him but I know that [Chuck Reeves] would recall me using that phrase.

Significantly, defendant has failed to produce any further evidence, documentary or testimonial, other than Mr. Halpern's self-serving testimony, that Halpern used the phrase "just do it" prior to using it on its website. Without more, the court deems Halpern's representation insufficient to create a genuine issue of material fact regarding his use of, and defendant's connection to, the phrase "just do it." See DeLoach v. Infinity Broadcasting, 164 F.3d 398, 402 (7th Cir. 1999) ("[T]he nonmoving party is not entitled to rely on conclusory allegations, unsupported by the record.").

Even if the court concluded otherwise, the fact remains that Halpern's prior use of the phrase would not defeat summary judgment. As the Fourth Circuit has noted, "All but the most blatant cybersquatters will be able to put forth at least some lawful motives for their behavior. To hold that all such individuals may qualify for the safe harbor would frustrate Congress' purpose by artificially limiting the statute's reach." Virtual Works, Inc. v. Volkswagen of America, Inc., 238 F.3d 264, 270 (4th Cir. 2001).

Defendant's awareness of plaintiff's JUST DO IT mark, which it admits is famous and distinctive, as well as its practice of using <justdoit.net> to divert web users to its own homepage

with a domain name and content wholly different from and unrelated to the JUST DO IT mark, establishes beyond question that defendant acted in bad faith and is not entitled to benefit from the ACPA's safe harbor provision.

Defendant's last argument is similarly unavailing. Defendant argues that plaintiff's ACPA claim is barred by laches, since defendant registered <justdoit.net> back in 1997, five years before plaintiff brought its claim, and defendant would be prejudiced by having to change its employees' email addresses and business documents containing the <justdoit.net> domain name. Defendant maintains that the <justdoit.net> domain name has "become recognized as having some relation to CGI by its employees and customers" and that "CGI would be damaged if it were forced to relinquish control of the domain name."

Even assuming arguendo that plaintiff had notice of defendant's use of the <justdoit.net> domain name, defendant has not established that plaintiff unreasonably delayed bringing action, especially considering that the ACPA was not enacted until November 1999. Further, that defendant may incur unspecified, unsubstantiated costs relating to plaintiff's success on its ACPA claim is insufficient to establish prejudice in the instant case. Cf. AT&T Corp. v. ATT&T, Inc., 2002 WL 31500934, *2 (D.Del. Oct. 31, 2002) (granting summary judgment against defendant notwithstanding the fact that "defendant [is] a small business which would be significantly harmed by having to change its name and associated signage, stationery, etc.").

For these reasons, plaintiff's motion for summary judgment on its ACPA claim is granted.

2.  Defendant's motion for summary judgment on Count IV

Defendant has moved for summary judgment on plaintiff's claim for dilution under the Lanham Act, 15 U.S.C. § 1125(c), arguing that plaintiff cannot show that defendant's use of the <justdoit.net> domain name actually diluted plaintiff's JUST DO IT mark. The court disagrees.

"The term 'dilution' means the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of– **(1)** competition between the owner of the famous mark and other parties, or **(2)** likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127. In Moseley v. V Secret Catalog, Inc., et al., 537 U.S. 418, 432-33 (2003), the Supreme Court held that the text of § 1127 "unambiguously requires a showing of actual dilution, rather than a likelihood of dilution." In dicta, the Moseley court explained that "direct evidence of dilution such as consumer surveys will not be necessary if actual dilution can reliably be proved through circumstantial evidence – the obvious case is one where the junior and senior marks are identical." Id. at 434.

The parties disagree on the correct interpretation of the Moseley court's dicta regarding circumstantial evidence. According to defendant, the Moseley court meant that proof of actual dilution by circumstantial evidence is sufficient if the marks are identical. See, e.g., Savin Corp. v. Savin Group, 2003 WL 22451731, at *14-15 (S.D.N.Y. October 24, 2003). Plaintiff, on the other hand, maintains that if the marks are identical, that in itself constitutes sufficient circumstantial evidence of dilution. See, e.g., Nike Inc. v. Variety Wholesalers, 274 F. Supp. 2d 1352, 1372 (S.D.Ga. 2003). The court need not resolve this dispute, however, because in addition to the identity of the marks at issue, there is sufficient circumstantial evidence of dilution in the record to preclude summary judgment.

First, defendant conceded in its response to plaintiff's motion for summary judgment on its ACPA claim that the <justdoit.net> domain name has "become recognized as having some relation to CGI by its employees and customers." Further, when asked at his deposition whether people ever mentally associate defendant's <justdoit.net> with Nike, defendant's CEO, Halpern, testified, "I have got to believe that at some point somebody said... oh, like Nike." The court concludes that this evidence, along with the identity of the marks, is sufficient to create an issue of material fact regarding plaintiff's dilution claim.

Accordingly, defendant's motion for summary judgment on Count IV is denied.

## CONCLUSION

For the reasons stated herein, plaintiff's motion for summary judgment on Count I is granted, and defendant's motion for summary judgment on Count IV is denied. The parties are directed to appear for a status report on June 1, 2004, at 9:00 a.m.

**ENTER:** **May 21, 2004**

Robert W. Gettleman
United States District Judge